This document was signed electronically on April 14, 2017, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated:  April 14, 2017



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Case No. 14-52325 |
| MARGARET KATIE WARNER, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Adversary Proceeding No. 15-05115 |
| _____ | ) | |
| | ) | |
| MARC P. GERTZ, Trustee, | ) | Judge Alan M. Koschik |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARGARET KATIE WARNER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM DECISION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Marc P. Gertz, the duly-appointed Chapter 7 trustee (the "Trustee") in the underlying

bankruptcy case in which this adversary proceeding arises, has filed a complaint for declaratory

and injunctive relief regarding the right, title, and interest of the parties in the federal Thrift Savings Plan ("TSP") custodial account of defendant Carlos Warner. Mr. Warner is the husband of debtor Margaret Katie Warner (the "Debtor"). The Debtor filed a complaint for divorce against Mr. Warner prior to her Chapter 7 petition. As of the petition date, the Ohio domestic relations court had not entered any domestic relations order approving a property settlement between the Debtor and her husband, including any "qualifying retirement benefits court order" ("QRBCO") (more fully defined, *infra*). The Trustee asserts that this posture allows him to stand in the shoes of the Debtor, and ultimately receive the funds from the TSP account to be distributed to the Debtor in the divorce, without running afoul of either the anti-alienation provision of the TSP's governing statute, or the exemptions applicable to tax-advantaged retirement accounts under Ohio law and federal bankruptcy law. The Debtor and the United States of America (the "United States"), on behalf of its defendant agency, the Internal Revenue Service (the "IRS"), each filed answers contesting the Trustee's claims.

Currently before the Court are the motion for partial summary judgment by the United States (Docket No. 15)[1] (the "United States Motion") and the motion for summary judgment by the Trustee (Docket No. 17) (the "Trustee Motion"), both filed on March 11, 2016. On March 25, 2016, the United States filed a response to the Trustee Motion and the Trustee filed a response to the United States Motion (Docket Nos. 18 and 19, respectively). The United States and Trustee each filed replies in support of their position on April 1, 2016. (Docket Nos. 20 and 23, respectively.) At an April 4, 2016 preliminary hearing on the motions, the Debtor's counsel announced that the Debtor had chosen not to provide additional briefing and would rest on the

---

[1] The complaint against the United States was dismissed on grounds of ripeness on June 16, 2016. However, the United States has not been dismissed as a party and its motion for partial summary judgment implicates matters that are ripe for adjudication, not the Trustee claims under 11 U.S.C. § 505 that were unripe. The United States Motion therefore was not withdrawn or mooted by the order dismissing the complaint against the United States.

briefs of the United States filed in opposition to the Trustee's Motion, as well as the United States' Motion, which essentially sought judgment in the Debtor's favor. At the request of the parties, the Court later conducted an oral argument on May 9, 2016.

The collection of issues presented by the six briefs and subsequent oral argument in this matter can be summarized thus:

(1) Whether the Debtor had a beneficial interest in the TSP account by virtue of her status as Mr. Warner's designated beneficiary;

(2) Whether Ohio domestic relations law grants a debtor a present interest in all or a portion of her spouse's retirement plan assets upon the filing of a divorce action;

(3) Whether a debtor's interest in a spouse's TSP account after filing for divorce but prior to the entry of a QRBCO is property of the estate pursuant to 11 U.S.C. § 541, or is excluded from property of the estate pursuant to 11 U.S.C. § 541(c)(2);

(4) Whether a debtor's interest in a spouse's TSP account after filing for divorce but prior to the entry of a QRBCO can be exempted from the bankruptcy estate pursuant to 11 U.S.C. § 522; and

(5) Whether it is legally permissible for a bankruptcy estate trustee to use a QRBCO under the TSP's enabling statute to effect an assignment of benefits in a TSP custodial account to bankruptcy estate administered by such trustee.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), and (O) and the Court has authority to enter a final judgment.

## SUMMARY JUDGMENT STANDARD

In bankruptcy cases, including adversary proceedings, a party may move for summary judgment at any time before 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise. Fed. R. Bankr. P. 7056 (otherwise incorporating Fed. R. Civ. P. 56), *see also* Fed. R. Bankr. P. 9014(c). When a party so moves, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A Plaintiff movant must establish all essential elements supporting its claim in this fashion; a defendant must establish that any one (or more) essential elements of Plaintiff's claim fails, or establish all elements of one or more of defendant's affirmation defenses, in order to obtain a defense judgment by summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Evidence presented in support of summary judgment is viewed in the light most favorable to the non-moving party "drawing all reasonable inferences in its favor." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). However, if a moving party meets its burden to establish a lack of genuine dispute as to a material fact, the burden then shifts to the non-moving party to "come forward with evidence which would support a judgment in its favor." *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e). In responding in this way to a motion for summary judgment, the non-moving party may not rely on a "mere scintilla of evidence" in support of its opposition to the motion. There must be enough evidence

- 4 -

presented in which a jury could reasonably find for the non-moving party. *Zenith*, 475 U.S. at 586.

In this adversary proceeding, and on the cross-motions for summary judgment currently before the Court, the parties are of the unanimous opinion that summary judgment is appropriate here without the need for a trial. The Court agrees. The disputes before the Court concern only the correct legal conclusions based on undisputed facts.

## UNDISPUTED FACTS AND PROCEDURAL HISTORY

The parties submitted a substantial stipulated record for the Court to take under advisement, including exhibits. (Docket No. 12.) The following facts are derived from those stipulations, stipulated exhibits, and the Court's own docket.

The Debtor married Carlos Warner, also a defendant in this action, on or about August 20, 2005. She filed a complaint for divorce against him in the Domestic Relations Division of the Summit County Court of Common Pleas (the "State Court") on August 12, 2013.

Mr. Warner works as a public defender for the Office of the Federal Public Defender for the Northern District of Ohio, and is thus an employee of the United States Government. Through that employment, he is a participant in the Thrift Savings Plan ("TSP"), which is a defined-contribution retirement plan for federal employees. Mr. Warner has contributed a custodial account in his name held within the TSP. As of September 3, 2013, when Mr. Warner filed an Affidavit of Property with the State Court, he estimated that the balance in his TSP account was $101,000. (Docket No. 12 at ¶ 14 and Ex. C.) In the affidavit, Mr. Warner described the account as a "401K" account. *Id.*

Mr. Warner opened his TSP account on or about September 19, 2005, thirty days after he married the Debtor. The Debtor has never made any direct contributions into Mr. Warner's TSP account.

Mr. Warner, who is still living, has designated the Debtor as the primary beneficiary of his interest in the TSP account.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 4, 2014. Marc P. Gertz was duly appointed the Chapter 7 trustee for the estate of the Debtor pursuant to designation of the United States Trustee.

The Trustee filed his complaint in this adversary proceeding on October 13, 2015. In it, he alleged that the "equitable claim to an equal division and distribution of the marital property" is property of the estate (Compl. ¶ 8), and that the Trustee was entitled to an order directing distribution of such property interest to the Trustee. (Compl. ¶ 9). The Trustee's complaint further asks this Court "to enter its order authorizing and empowering the trustee to execute a QDRO directing distribution of such funds to the estate and compelling the defendant, Todd Warner, to join in such Qualified Domestic Relations Order."[2] (Compl. ¶ 12.)

The United States filed its answer on November 10, 2015. The Debtor filed her answer on November 19, 2015. Mr. Warner filed an answer much later, on March 7, 2016, but did not materially participate in this adversary proceeding.

Following a further pretrial after the close of discovery, the Court entered a scheduling order setting simultaneous deadlines for stipulations, dispositive motions, response briefs, and replies. The Court informed Mr. Warner that his participation in the dispositive motion briefing

---

[2] The Court presumes that the Trustee meant to refer to a QRBCO, not a "qualified domestic relations order" or "QDRO," which is the domestic relations transfer device applicable to private pension and retirement plans governed by ERISA. *See* pages 9-10, *infra*.

- 6 -

was not necessary, and Mr. Warner did not file or respond to any dispositive motions. The United States and the Trustee each filed dispositive motions, filed responses to each other's motion, and filed replies in support of their own. The Unites States also filed, on April 1, 2016, its Motion to Dismiss the Second Claim for Relief in the Trustee's Complaint directed directly at the United States IRS.[3]

At the request of the parties, the Court held an oral argument on the cross-motions for summary judgment on May 9, 2016. At the conclusion of the oral argument, the Court took the matter under advisement.

## LEGAL ANALYSIS

As in all bankruptcy cases of individual debtors, the Court must determine what legal or equitable interests the Debtor had in property as of the commencement of her case, which interests in her property became property of the bankruptcy estate that the Trustee may administer, and which of those assets may be exempted from the estate and claims of the Debtor's creditors. More specifically, the Court here is called upon to answer those questions with respect to the Debtor's rights to her share of her husband's retirement account after filing a divorce action but before effectuating a division of that account via a transfer of assets authorized by a QRBCO, the form of order specifically provided for division of TSP accounts in divorce cases by the governing statute and regulations.

The Court undertakes these inquiries in this case by examining the distinct forms of interests various parties argue the Debtor had as of the commencement of the case in the TSP

---

[3] The United States' motion to dismiss was confined to the Trustee's direct claims against the IRS for tax determination under 11 U.S.C. § 505. The Trustee did not oppose the motion to dismiss. The Court granted the United States' motion to dismiss on June 16, 2016, specifically on the ground that the claims in the Complaint against the IRS directly for determination of tax liability under 11 U.S.C. § 505 were not ripe for decision. (The United States had asserted multiple additional grounds for dismissal.) The United States' separately-filed motion for summary judgment was unaffected by this dismissal, since it concerned the separate issues in the Complaint that are ripe for adjudication.

account assets.  First, whether the Debtor had a beneficial interest in the TSP account assets by virtue of her designation by Mr. Warner as a beneficiary.  Second, whether the Debtor had acquired a present interest in the Plan assets, or as the Trustee argues, a mere equitable claim to a distribution from marital assets pursuant to Ohio domestic relations law.  The proper legal characterization of these distinct rights informs the further inquiries about what is or is not property of the bankruptcy estate and what property of the bankruptcy estate is exempt.

I.      **The Debtor's Beneficial Interest in the TSP Account Assets Is Not Property of the Estate.**

   A.      **The Debtor Is a Beneficiary of Mr. Warner's TSP Plan Account Because She Is, and Was at All Relevant Times, the Designated Beneficiary.**

The parties have stipulated that Mr. Warner expressly designated the Debtor as a beneficiary of the TSP account pursuant to 5 U.S.C. § 8424(c).  (Docket No. 12 at ¶10.)  Unlike private retirement plans governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), the TSP's analogous, but not identical, governing statute, which is codified primarily at 5 U.S.C. §§ 8431-8440f, but also in other provisions within Chapter 84 of Title 5, 5 U.S.C. §§ 8401 *et seq.* (the "TSP Statute"), does not expressly require a spouse to be a plan participant's beneficiary.

This case varies slightly in this respect from the facts of *In re Lawson*, Adv. Proc. No. 15- 05094, Docket No. 44 (Bankr. N.D. Ohio Mar. 31, 2017) (Koschik, J.), in which the Court relied not only on the actual beneficiary designation, but also ERISA's statutory imperative that spouses be deemed presumptive beneficiaries.  *Lawson*, Docket No. 44 at 12-13.  Nevertheless, while the TSP Statute lacks this feature, the fact that the Debtor is and has at all relevant times been the beneficiary of Mr. Warner's TSP Account is sufficient for the Court to conclude that the Debtor had a beneficial intent in Mr. Warner's TSP Account within the meaning of the TSP

- 8 -

Statute as of the commencement of the Debtor's bankruptcy case. Indeed, the parties' stipulations makes that legal conclusion clear. (Docket No. 12 at ¶ 10.)

## B. The Debtor's Beneficial Interest in the TSP Account Assets Is Excluded From the Bankruptcy Estate Pursuant to 11 U.S.C. § 541(c)(2).

The Bankruptcy Code provides that "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a [bankruptcy case]." 11 U.S.C. § 541(c)(2). This provision, expressly referenced in Bankruptcy Code Section 541(a) as an exception to the property constituting the estate, "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The Thrift Savings Fund[4] is such a trust subject to an anti-alienation clause. 5 U.S.C. § 8437(g) expressly provides that the Thrift Savings Fund holds employee and member funds in trust for such members. Another provision of Section 8437 provides that "sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C. § 8437(e)(2). *Patterson* and 11 U.S.C. § 541(c)(2) form the backbone of the United States' primary argument in its motion for partial summary judgment and supporting briefing, which urges that the Debtor's interest in Mr. Warner's TSP account are properly excluded from property of her bankruptcy estate and may not be distributed to creditors by the Trustee.

---

[4] The Thrift Savings Fund is a specific fund within the Treasury of the United States established by 5 U.S.C. § 8437(a), and it is where the assets attributable to members' custodial accounts are held. The Court observes that although the United States became involved in this action as a named defendant subject to tax determination claims asserted against the IRS, a division of the Treasury of the United States, it also has an incidental, but important interest in this adversary proceeding as, essentially, the sponsor, fiduciary, and custodian of the TSP, a portion of whose assets the Trustee seeks to obtain for the bankruptcy estate in this case.

There are exceptions to the anti-alienation provision of 5 U.S.C. § 8437(e)(2) provided for in Section 8437(e)(3). The only one of these that is potentially relevant to the issues currently before the Court is amounts payable to other persons under 5 U.S.C. § 8467. That section provides that the TSP may pay funds from an employee's, member's, or annuitant's account "to another person if and to the extent expressly provided for in the terms of—(1) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8467(a)(1). Federal regulations promulgated related to that section further introduce the concept of a "qualifying retirement benefits court order" previously defined as a ("QRBCO"). 5 C.F.R. § 1653.2.[5] This regulation, which no party to this adversary proceeding has challenged, states that to be enforceable against the TSP, a retirement benefits court order must meet certain requirements. It further contains a list of certain characteristics that an order cannot have if it is to be honored by the TSP as a QRBCO. The QRBCO mechanism is analogous, but not identical, to the "qualified domestic relations order" (QDRO) mechanism in ERISA. *Compare* 5 C.F.R. 1653.2 *with* 29 U.S.C. § 1056(d)(3). *See also In re Lawson*, Adv. Proc. No. 15-05094, Docket No. 44 at 2, 12, and 15 (Bankr. N.D. Ohio Mar. 31, 2017) (Koschik, J.).

If an order qualifies as a QRBCO, then the anti-alienation provision of 5 U.S.C. § 8437(e)(2) would not prohibit the distribution of plan assets to an alternate payee who was either a divorcing spouse or surviving child. However, it is important to emphasize that the

---

[5] *See generally* 5 C.F.R. §§ 1653.1-1653.5.

QRBCO mechanism is an exception to the general anti-alienation rule.[6]  The Trustee concedes that if the domestic relations court had already entered a QDRO (or, presumably, a QRBCO), 11 U.S.C. § 541(c)(2) would apply and the transfer restrictions would be enforceable.  (Docket No. 19 at 5.)

In the Court's view, the rule of *Patterson* applies to this case as well.  While *Patterson* involved an anti-alienation provision in an ERISA retirement plan, the reasoning of *Patterson* applies with equal force to funds in the Thrift Savings Plan, even though the TSP is not governed by ERISA.  *See, e.g., In re O'Neal*, 462 B.R. 324, 331 (Bankr. D. Mass. 2011) (citing *Patterson* and proceeding to hold that "[f]unds held in a federal Thrift Savings Plan likewise are statutorily protected against assignment or attachment, and are excluded from the bankruptcy estate.").  The TSP shares many functional characteristics with ERISA plans.  Most significantly for the issues currently before the Court, both the TSP and ERISA contain mandatory anti-alienation provisions, *compare* 5 U.S.C. § 8437(e)(1) *with* 29 U.S.C. § 1056(d)(1) (TSP directly provides that benefits may not be assigned or alienated, while ERISA requires all ERISA-qualified pension plans to provide that the benefits may be assigned or alienated).  The TSP also provides for tax treatment of the Thrift Savings Fund as a trust under Section 401(a) of the Internal Revenue Code, 5 U.S.C. § 8440, similar to many ERISA plans, such as the familiar 401(k) plans provided by many private employers.  While both ERISA and the TSP Statute are extraordinarily complex and detailed, and there are doubtless other points on which they differ, the anti-alienation and trust provisions are similar enough that the Court is comfortable applying caselaw on ERISA to the TSP on those issues.  This matters here because caselaw on ERISA is

---

[6]  *See* Section III, *infra,* regarding the Trustee's argument that the Court can and should grant him leave to seek from the State Court entry of a QRBCO naming him as a beneficiary of Mr. Warner's TSP account on the grounds that he has squeezed his feet into the Debtor's shoes.

considerably more extensive and developed than caselaw specifically on the TSP Statute. The United States' counsel acknowledged this at oral argument, and the Court's subsequent research confirms as much.

*Patterson* held that Section 541(c)(2)'s exclusion of trusts containing restrictions on transfers enforceable under applicable nonbankruptcy law from property of the estate extends to a debtor's interests as a plan participant. *Patterson's* reasoning, however, was not limited to plan *participants*, but rather extended to "*any* interest [held by a debtor] in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate,* 504 U.S. at 758 (emphasis added). Indeed, the statute itself refers to "a *beneficial* interest of the debtor in a trust." 11 U.S.C. § 541(c)(2) (emphasis added).

Therefore, the Court concludes that the beneficial interest of the Debtor in her husband's TSP account is excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), as interpreted by the U.S. Supreme Court in *Patterson v. Shumate,* 504 U.S. 753 (1992).

## II. The Debtor Has a Contingent Interest in a Share of the TSP Account Assets Under Ohio Domestic Relations Law That Is Exempt From the Trustee's Administration Under Both Ohio and Federal Exemption Statutes.

The Trustee's initial argument in his Motion and Complaint is that the Debtor has no vested beneficial rights in the Plan that are excepted from the bankruptcy estate pursuant to Section 541(c)(2) because the State Court has not entered a QRBCO, Mr. Warner remains living, and the Debtor had no other interest in the TSP account assets. The Court has rejected those arguments in Section I, *supra,* and on that basis has concluded that the Debtor's beneficial interest in the Plan is excluded from the bankruptcy estate. This conclusion could, and perhaps should, end the Court's inquiry.

However, the Trustee's now rejected premise led to his argument that even though the Debtor had no vested beneficial interest to assets in the Plan, she nevertheless had an equitable claim to a distribution of TSP account assets, along with other marital assets, as a divorcing, but not yet divorced spouse. The Trustee asserts that this equitable claim is property of the bankruptcy estate notwithstanding Section 541(c)(2)'s exclusion of beneficial interests in a trust subject to an anti-alienation clause. The Trustee further contends that this equitable claim to a distribution of marital assets is not exempt pursuant to 11 U.S.C. § 522. In order to address the Trustee's arguments comprehensively, the Court analyzes the Debtor's rights in the TSP account assets as a divorcing spouse and the extent to which such rights are exempt under Section 522.

A. **Upon the Filing of Her Divorce Action, the Debtor Acquired a Contingent Interest in Her Husband's Retirement Plan As a Marital Asset Pursuant to Ohio Domestic Relations Law.**

In Ohio divorce proceedings, "the court shall … determine what constitutes marital property and what constitutes separate property … [and] shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). When undertaking this determination, "the court has jurisdiction over all property, excluding the social security benefits of a spouse … in which one or both spouses have an interest." *Id.* "Marital property" includes, *inter alia*, "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). The parties have stipulated that Mr. Warner opened his TSP account after he married the Debtor (Docket No. 12 at ¶¶ 5 and 8), so all of his contributions to his TSP account were made during their marriage.

The Trustee argues that the divorce complaint creates a mere equitable *claim* and thereby attempts to separate the divorcing debtor's rights from the nature of the underlying assets. This sleight of hand suggests that the divorcing debtor's rights are reduced to claims -- essentially either choses in action or accounts receivable -- assets that would require their own designation in an applicable exemption statutes in order to be exempt. The Trustee's central contention is that the Debtor did not have an interest in the TSP account assets themselves, which the Trustee concedes would be exempt. (Docket No. 24 at 8.) Instead, the Trustee argues that the Debtor had a domestic relations law claim for equitable distribution of marital assets, which was at that point sufficiently undifferentiated and inchoate that it was not specifically an interest in the Plan assets. "Without a divorce decree or the issuance of a QDRO, the claim for retirement benefits are [sic] nothing more than a claim for equitable distribution." (Docket No. 17 at 9.) "Debtor has nothing more than an equitable claim." (Docket No. 24 at 7.) Thus, according to the Trustee's argument, "the Trustee is *not* demanding turnover of any portion of the Thrift Savings Plan." (Docket No. 17 at 10.) The Trustee contends that he is simply seeking to liquidate a domestic relations law claim—an equitable claim arising under Ohio state law—that he further contends could, somehow, be satisfied by a distribution of assets from a TSP trust account that is otherwise protected from the claims of creditors by federal law.

However, Ohio bankruptcy courts have interpreted R.C. 3105.171(B) to mean that upon a spouse filing for divorce, each spouse acquires a contingent *interest* in the marital property, not merely a generalized equitable *claim*. *In re Greer*, 242 B.R. 389, 395-96 (Bankr N.D. Ohio 1999); *In re Street*, 395 B.R. 637, 643-44 (Bankr. S.D. Ohio 2008); *see also In re Dzielak*, 435 B.R. 538, 546 (Bankr. N.D. Ill. 2010) (applying Illinois law).[7] This contingent interest arises

---

[7] In *Dzielak,* the court noted specifically that the debtor did not raise the argument that her potential interest in the retirement plan at issue was not property of the bankruptcy estate pursuant to Section 541(c)(2). 435 B.R. at 546.

pursuant to state domestic relations law independent of any vested beneficial interest arising

from the TSP Statute or, in other cases, from ERISA, the terms of a retirement plan, and/or a

domestic relations order.  It applies to all of the marital property, regardless of the name in which

such property may be titled, and is not limited to retirement plan assets.  However,

> such a property interest is limited.  Specficially, given the fact that neither spouse
> is assured of receiving any specific item of 'marital property,' the Court holds that
> upon a spouse filing for divorce, and until a formal distribution of the parties'
> property is made, the interest of the spouse acquires in the other's separately titled
> property is strictly contingent, therefore subject to later divestment if the state
> court with jurisdiction over the parties' property does not enter an order awarding
> the property to a non-title holding spouse.  The effect of this is that although
> contingent interests are clearly property of the bankruptcy estate pursuant to §
> 541(a), the contingency of the interest may prevent the bankruptcy trustee from
> ever utilizing the property for the benefit of the bankruptcy estate given the fact
> that federal law clearly holds that the extent to which an interest in property is
> limited in the hands of the debtor, it is equally limited in the hands of the
> bankruptcy estate.

*In re Greer,* 242 B.R. at 396-97 (citations omitted).

While this interest is contingent, it is not speculative; it is a present interest in each item

of marital property.  *Greer* found that "it was the intention under Ohio law to confer upon a

spouse an interest in any property that is or would qualify as 'marital property,' regardless of

whether such property was separately titled."  *Id.* at 396.  Since "neither spouse is assured of

receiving any specific item of 'marital property,' … the interest a spouse acquires in the other's

separately titled property is strictly contingent," *id.*, but it does exist.

In this case, where the Debtor filed her bankruptcy petition after filing her divorce action,

the Debtor had just such a present, contingent interest in the marital property, in particular the

---

Although silent on the point, the same seems to be true in *Greer* and *Street* where the opinions do not address the issue.

- 15 -

TSP account assets, as of the commencement of this case.[8]  Therefore, the Trustee cannot avoid the question of whether the Debtor's interest in that property is subject to exemption.

**B.     The Debtor's Contingent Interest in the Plan Is Exempt Under Both Ohio and Federal Exemption Statutes Applicable in this Bankruptcy Case.**

An individual debtor may exempt certain interests in property from the estate.  *See* 11 U.S.C. § 522.  Initially, there are two alternative categories of exemptions that debtors may choose, the so-called "state" exemptions available to any debtor (bankrupt or not) by state law, or the "federal" exemptions set out in 11 U.S.C. § 522(d).  However, as permitted by 11 U.S.C. § 522(b)(2), Ohio has specifically provided that Ohio-domiciled debtors are not eligible to claim the federal exemptions under 11 U.S.C. § 522(d).  R.C. 2329.662.  Therefore, the exemptions applicable to individual debtors in Ohio are uniformly those set forth in 11 U.S.C. § 522(b)(3), which incorporates Ohio's exemption statutes.[9]  Those exemptions include an exemption, with no dollar limitation, for a debtor's "rights to or interest in a pension, benefit, annuity, retirement allowance, or accumulated contributions," R.C. 2329.66(A)(10)(a) and a debtor's "rights or interests in the assets held in, or to directly or indirectly receive any payment or benefit under, any individual retirement account [or] individual retirement annuity," R.C. 2329.66(A)(10)(c).  These exemptions expressly apply to any "alternate payee under a qualified domestic relations order (QDRO) or other similar court order."  R.C. 2329.66(A)(10)(f).  Ohio law provides a further exemption, also with no dollar limitation, for "[a]ny other property that is specifically

---

[8]  For the reasons set forth in Section I of this Memorandum Opinion, the Debtor actually had more than a present contingent interest in the TSP account assets.  She had a vested beneficial interest in those assets.  The point here is that even if she did not have such vested beneficial interest, for example if she were not a named beneficiary, Ohio domestic relations law would have nevertheless given her upon filing the divorce action a present contingent interest in marital property capable of exemption if such assets qualified under applicable exemption statutes.

[9]  The applicable state exemptions may vary if a debtor has not lived in Ohio for the 730 days preceding the petition.  *See* 11 U.S.C. § 522(b)(3)(A).  Because that has not been alleged to be the fact in this case, the Debtor is eligible for the exemptions provided in R.C. 2329.66.

- 16 -

exempted from execution, attachment, garnishment, or sale by federal statutes other than [the Bankruptcy Code." R.C. 2329.66(A)(17).

Moreover, in all bankruptcy cases in which the debtor uses the Section 522(b)(3) exemptions, regardless of what state exemptions may be provided and incorporated by 11 U.S.C. § 522(b)(3)(A), the Bankruptcy Code also allows a debtor to exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 523(b)(3)(C). The TSP statute expressly provides that "the Thrift Savings Fund shall be treated as a trust described in section 401(a) of [the Internal Revenue Code]," thereby meeting that definition. 5 U.S.C. § 8440(a)(1).

The contingent interest created by R.C. 3105.171(B) is the fatal flaw in the Trustee's argument that the Debtor did not have an interest in the TSP account assets as of the date of her petition in which she could claim an exemption. Because the contingent interest arises upon the filing of a complaint for divorce and is not dependent on any later order of any court, "upon the commencement of the divorce proceeding … [the debtor] obtained an interest in the retirement plan and retained that interest as of the petition date, entitling her to utilize the exemption." *Street,* 395 B.R. at 643.[10] The same result occurs here.

Therefore, even if the contingent interest created by Ohio domestic relations law exists separate and apart from the Debtor's excluded beneficial interest in the Plan account as a result

---

[10] The bankruptcy court in *In re Dzielak*, 435 B.R. 538 (Bankr. N.D. Ill. 2010) noted that there are some states, such as Connecticut and New York, in which the mere commencement of a dissolution action does not create a legal or equitable interest in either spouse with respect to the other spouse's property. *Id.* at 547 (distinguishing such states from Illinois, the law of which does create such an interest upon the commencement of a divorce action). However, under the law of Ohio, as in Illinois, such an interest arises as of the commencement of a divorce action.

- 17 -

of her designation as a beneficiary, the Debtor may nevertheless exempt that interest from the bankruptcy estate.

The structure of 11 U.S.C. § 522(b)(3) is highly revealing of Congress' policy with respect to the paramount importance of retirement funds not coming into bankruptcy estates: Sections 522(b)(3)(A) and (b)(3)(C) stand at the same level.  In other words, even if a state were to (a) require individual debtors to use the § 522(b)(3) exemptions, as Ohio does, and (b) did not include in its own state statutes an exemption for retirement funds held in tax-exempt accounts pursuant to the applicable Internal Revenue Code sections, the Bankruptcy Code would nevertheless exempt such assets.  Moreover, since retirement funds exempt under I.R.C. §§ 401, 403, 408, 408A, 414, 457, or 501(a) are also included in the so-called federal exemptions applicable in some states at the election of the debtor, *see* 11 U.S.C. § 522(d)(12), the ultimate lesson of the Bankruptcy Code exemption scheme is that no matter what laws a state might enact and no matter what decision a debtor might make in states where debtors may decide between state and federal exemptions, retirement funds governed by those provisions of the Internal Revenue Code will be exempt.  The incidental timing of a divorce complaint, a bankruptcy filing, and/or the entry of a divorce decree, domestic relations order, QDRO, or QRBCO does not change the result.

### C.  The Pennsylvania Cases Relied Upon by the Trustee Are Both Distinguishable and Unpersuasive.

The Trustee cites two cases, both from the Western District of Pennsylvania and from the same line of caselaw, in support of his position.  The foundational case of the Trustee's argument is *In re Burgeson*, 504 B.R. 800 (Bankr W.D. Pa. 2014).  In *Burgeson*, many facts were similar to the facts here: a divorce proceeding had been filed but no qualified domestic relations order had been entered therein when the spouse, who was not a participant in the pension plan at issue,

- 18 -

filed bankruptcy. The same facts also presented themselves in *Urmann v. Walsh*, 523 B.R. 472 (W.D. Pa. 2014). Both cases arose from a trustee's objection to exemptions claimed by debtors in ERISA plan assets. In *Burgeson*, the exact type of pension plan at issue was not specified, but the strong implication is that it was a traditional defined benefit pension plan. In *Urmann*, the plan at issue was a 401(k) plan. *Urmann*, 2014 WL 1491328 at *1.

Pennsylvania domestic relations law also appears to follow the same rule as Ohio's with respect to the interests that arise in marital property when a divorce is filed. *See In re McCulley*, 150 B.R. 358, 361 (Bankr. M.D. Pa. 1993) ("the date of entitlement to a spouse with regard to marital property is on the date the divorce is filed").

In both *Burgeson* and *Urmann*, the court held, as the Trustee would have this Court hold, that the debtor had only a claim for equitable contribution under the state's domestic relations law and that such claim was not actually an interest in pension plan assets subject to ERISA (or other federal) anti-alienation protections that the Bankruptcy Code would respect via 11 U.S.C. § 541(c)(2), and more important, not subject to bankruptcy exemptions available under 11 U.S.C. § 522(d)(10) or (d)(12). (Pennsylvania allows debtors to utilize the federal exemptions, and the debtors in both *Burgeson* and *Urmann* did so.)

There is one potentially notable distinction between these Pennsylvania cases and this one: in both *Burgeson* and *Urmann*, the debtor was not only not a participant in the respective pension plan at issue in each case, she was not a beneficiary under the plan at issue, either.[11] This was essential to both holdings. In *Burgeson,*

> Because no QDRO existed as of the Petition Date, and the Debtor was not a participant nor named as a beneficiary of the Pension, the Debtor had no beneficiary interest in the Pension as of the Petition Date; rather, at the time of

---

[11] The debtor's lack of beneficiary status in *Urmann* is not expressly restated in the district court decision, but was found as fact in the bankruptcy court decision below it and was undisturbed on appeal. *See In re Urmann*, 2014 WL 1491328, *3 (Bankr. W.D. Pa. Apr. 15, 2014).

- 19 -

filing the bankruptcy petition, the Debtor had an interest in a claim for equitable distribution.

*Id.* at 805. The *Urmann* court expressly followed the logic of *Burgeson*. *See Urmann*, 523 B.R. at 479.

The parties have stipulated that the Debtor in this case is the designated beneficiary of Mr. Warner's interest in his TSP account. As such, even before the entry of a QRBCO, the Debtor here had a beneficial interest in the Plan assets as of the petition date. Therefore, *Burgeson* and *Urmann* are distinguishable on their facts.

The Court is also unconvinced by the reasoning of *Burgeson* and *Urmann*. While *Burgeson* and *Urmann* found their respective debtor's lack of beneficiary status to be an essential issue, *Greer* and *Street* did not turn on the beneficiary status of the nonparticipant spouse. They concluded, instead, that the present, contingent interests in marital assets obtained by operation of domestic relations law upon filing a divorce complaint were sufficient to be considered for exemption under applicable statutes based on the nature of each specific marital asset, not an abstract claim for distribution. The Court adopts the analysis of the two Ohio bankruptcy courts instead of that of the courts from the Western District of Pennsylvania. Even if the Debtor in this case had not already been a beneficiary of the TSP, she would have nevertheless gained a contingent interest in the TSP account assets upon the filing of the divorce action, an interest this Court has already concluded is exempt under 11 U.S.C. § 522(b)(3)(C) and R.C. 2329.66(A)(10) and (17).

**III.    Even if the Debtor Had Only a Claim for Equitable Contribution, the Court Cannot Compel the Debtor or the State Court to Issue a QRBCO With the Trustee as Direct Payee.**

The Trustee appears to be aware of the difficulty posed by the exemption issue. Perhaps this is why his Complaint and his legal argument in support of his Motion make an additional

- 20 -

extraordinary demand: that the Court enter an order "authorizing and empowering the trustee to execute a QDRO [sic] directing distribution of such funds to the estate and compelling the defendant, Carlos Warner, to join in such Qualified Domestic Relations Order." (Compl. ¶ 12.)

Bankruptcy courts generally avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court colleagues and their established expertise in such matters. *In re White*, 851 F.2d 170, 173 (6th Cir. 1988) (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)). However, in addition to general doctrinal reasons for not intruding upon the domestic relations court process, the TSP Statute does not authorize a QRBCO to a creditor or a creditor's representative.

The Court's equitable powers end where express statutory limits begin. A QRBCO "can require a payment *only* to a spouse, former spouse, child or dependent of a participant." 5 C.F.R. 1653.2(a)(4) (emphasis added).

The Trustee argues that his status a trustee gives him the ability to "stand in the shoes" of the Debtor to obtain a QRBCO pursuant to 11 U.S.C. § 541 and *In re Dively*. (Docket No. 17 at 9.) *Dively* determined that "the fact that a bankruptcy trustee is not specifically identified as an 'alternate payee' or 'beneficiary' under ERISA is of no moment," 522 B.R. at 784, because of 11 U.S.C. § 105(a) (empowering bankruptcy courts to issue any "order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]") and 29 U.S.C. § 1144(d), which provides that "[n]othing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." *Dively* proceeded to hold that court authorization for the trustee to seek a QDRO was an "order, process, or judgment" under Section 105, and that ERISA did not preclude it. *Id.* at 784. Similar logic might apply to the TSP Statute if *Dively* were correct.

- 21 -

However, the Court does not find *Dively* persuasive on this issue. It is true that 29 U.S.C. § 1144(d) does not limit the application of 11 U.S.C. § 105(a). But that truism ignores a more fundamental point: the Court's equitable powers under Section 105(a) are inherently limited. "While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law." *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990); *see also In re Dues*, 98 B.R. 434, 437 (Bankr N.D. Ind. 1989) ("Section 105 … may only be used as a basis for the court's action where other applicable law does not address the situation."). The Court cannot use its equitable powers to add a new category of persons eligible to be alternate payees under 5 C.F.R. § 1653.2 when that list is already set forth in that regulation.

## CONCLUSION

The Debtor's interest in Mr. Warner's TSP account and the assets therein by virtue of her status as a beneficiary were excluded from the estate by operation of 11 U.S.C. § 541(c)(2). In addition, the Debtor's contingent interest in the TSP account assets that arose by virtue of her divorce filing in Ohio state court was subject to exemption pursuant to 11 U.S.C. § 522(b)(3)(C) and R.C. 2329.66(a)(10) and (17).

The Court will enter a separate form of judgment granting the United States' motion for partial summary judgment and denying the Trustee's motion for summary judgment.

# # #